UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA GRIMES,

      Plaintiff,

v.

                                        Case No. 2:25-cv-502-KCD-DNF

CITIGROUP INC.,

      Defendant.
_____/

## **ORDER**

Plaintiff Brenda Grimes sues Defendant Citigroup, Inc.[1] under the Fair Debt Collection Practices Act and similar statutes. (*See* Doc. 4.) She claims Citigroup issued her an unsolicited "Citi Diamond Preferred credit card" in 2022 and then converted the account to a "Citi Double Cash credit card" in 2025. (Doc. 13 at 1-2.)[2] This allegedly fraudulent account has damaged Grimes's credit score and caused "$2,435.04 in additional car loan interest." (Doc. 15 at 2.) Citigroup has moved to compel arbitration. (Doc. 13.)

Arbitration is simply a matter of contract. "[I]t is a way to resolve those disputes . . . that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Given arbitration

---

[1] Defendant claims that its correct name is "Citibank N.A." (Doc. 13 at 1.) No party has moved to correct the complaint by interlineation or otherwise amend. Thus, the Court uses the name "Citigroup" as alleged in the operative pleading. (Doc. 4.)

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

requires consent, a court presented with a motion to compel arbitration must assess three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *See Abellard v. Wells Fargo Bank, N.A.*, No. 19-CV-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019). When operating under the Federal Arbitration Act, as the parties agree is applicable here, "if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration." *Id.* "The court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the claims at issue." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010).

Grimes first argues that Citigroup has not proven a valid arbitration agreement exists. (Doc. 32 at 4.) Not so. Citigroup relies on an arbitration clause from a Macy's American Express credit card issued to Grimes in 2021. Grimes does not deny opening the Macy's card. Nor does she deny that its contract includes an arbitration clause. (*See* Doc. 15, Ex. A.) She also offers no arguments to invalidate the arbitration provision. Nothing more is needed from Citigroup on this point. *See, e.g.*, *Greene v. Terminix Int'l Co. Ltd. P'ship*, No. 22-CV-20199, 2022 WL 2158713, at *4 (S.D. Fla. June 15, 2022).

Next, as mentioned, Citigroup must show that "an arbitrable issue exists." *Trinidad v. Hilton Grand Vacations, Inc.*, No. 6:24-CV-1540-WWB-DCI, 2024 WL 5483100, at *1 (M.D. Fla. Oct. 1, 2024). This element is missing,

2

according to Grimes, "because the Macy's American Express account, opened . . . and closed before the events at issue, has no factual connection to claims arising from [Citigroup's] conduct" of opening the two Citi cards she is contesting. (Doc. 32 at 6.) In other words, the arbitration clause in the Macy's agreement does not cover Grimes's current claims about the new, unsolicited credit cards.

Grimes is not wrong on the facts. The Macy's card has no apparent connection to the Citi accounts at issue. As discussed below, however, whether Grimes's claims are covered by the arbitration clause is not for the Court to decide. The Macy's agreement delegates that issue to the arbitrator.

"By default, a court would normally decide threshold disputes about whether a party's claims are arbitrable." *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). But when the contract clearly and unmistakably provides otherwise, such "gateway" issues are for the arbitrator to decide. *Id.*; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019) ("The [FAA] allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.").

Along with the arbitration clause, the Macy's agreement provides that arbitration will proceed before the American Arbitration Association "according . . . [to] the applicable AAA arbitration rules in effect when the claim

3

is filed[.]" (Doc. 13-1, Ex. 1 at 9.) Under the AAA's rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

In the Eleventh Circuit, incorporating the AAA's rules "constitutes a clear and unmistakable delegation of questions of arbitrability." *JPay, Inc. v. Kobel*, 904 F.3d 923, 941 (11th Cir. 2018). This is true "even if no other delegation language appears elsewhere in the contract." *Attix*, 35 F.4th at 1298. Given the undisputed language in the Macy's agreement, Grimes's arguments about what the arbitration clause covers are "committed to an arbitrator's review." *Id.* at 1302.

Trying to avoid this result, Grimes claims that a reviewing court must first determine whether the arbitration agreement "covers the [parties'] dispute before enforcing any delegation." (Doc. 32 at 7.) No matter how convincing this argument might seem, "[w]hen the . . . contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc.*, 586 U.S. at 68. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

4

Grimes also argues that the Court must decide whether the Macy's agreement applies in the first instance since there are other contracts in play. In her view, "when parties have multiple contracts or dealings—one potentially with a delegation provision and another without or conflicting—the court must determine which contract governs arbitrability." (Doc. 32 at 7.) This argument fails at its premise since this is not a case with multiple contracts. Plaintiff has denied the existence of any other agreement with Citigroup. (Doc. 15, Ex. A ¶ 12.) So the Court need not (and cannot) "decide which contract governs." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024).

Citigroup has proffered a valid arbitration agreement. The only remaining dispute—whether it covers Grimes's claims—has been delegated to an arbitrator. In these circumstances, "we stop." *Attix*, 35 F.4th at 1310. "If the parties agreed to delegate arbitrability questions and the opposing party has not specifically challenged the delegation provision," as here, "the court must end its inquiry and refer the matter to arbitration." *Foote v. All Elite Wrestling, LLC*, No. 3:24-CV-1206-HES-MCR, 2025 WL 1913228, at *2 (M.D. Fla. June 11, 2025).

For these reasons, it is **ORDERED**:

1. Citigroup's Motion to Compel Arbitration and Stay Proceedings (Doc. 13) is **GRANTED**. The parties are directed to arbitrate this case promptly in accordance with the Macy's agreement.

5

2. The clerk is directed to add a stay flag to the docket. This case will remain **STAYED** until the parties advise the Court that (1) arbitration has been completed and (2) the stay should be lifted, or the case should be dismissed.

3. The parties must notify the Court of the above within seven (7) days of the arbitration concluding. The parties are otherwise directed to file a joint report on the status of arbitration on December 19, 2025, and every ninety (90) days after, until arbitration concludes.

4. Citigroup's Motion for Leave to File Reply Brief (Doc. 29) is **DENIED AS MOOT**.

**ENTERED** in Fort Myers, Florida on September 16, 2025.

*[Signature]*
Kyle C. Dudek
United States Magistrate Judge